**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ARI GOLD, et al.,

Plaintiffs,

v. CIVIL ACTION NO. 2:25-cv-00623

RIPPA MACHINERY
GROUP CO., LTD, et al.,

Defendants.

# MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendant Rippa Machinery Group Co., Ltd.'s Motion to Dismiss Plaintiff's First Amended Complaint* (Document 40), *Defendant Rippa Machinery Group Co., Ltd.'s Memorandum of Law in Support of Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 41), the *Plaintiffs' Memorandum of Law in Opposition to Defendant Rippa Machinery Group Co., Ltd.'s Motion to Dismiss* (Document 46), and *Defendant Rippa Machinery Group Co., Ltd.'s Reply Memorandum of Law in Support of Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 49).

The Court has also reviewed the *McMillan Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 42), the *McMillan Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 43), the *Plaintiffs' Memorandum of Law in Opposition to Defendants McMillan's Motion to Dismiss* (Document 47), and the *McMillan Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 51).

In addition, the Court has reviewed *Defendants Energy Power Systems, LLC and Robert Lee Ray's Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 44), *Defendants Energy Power Systems, LLC and Robert Lee Ray's Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 45), the *Plaintiffs' Memorandum of Law in Opposition to Defendants Ray and Energy Power Systems, LLC's Motion to Dismiss* (Document 48), and *Defendants Energy Power Systems, LLC and Robert Lee Ray's Reply Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint* (Document 52).

## FACTUAL ALLEGATIONS

The Plaintiffs, Ari Gold and True Force Machinery LLC, initiated this action with a complaint filed on October 20, 2025. The operative pleading, the *First Amended Complaint for Violations of the Sherman Antitrust Act, the Racketeer Influenced and Corrupt Organizations (RICO) Act, and State Law* (Document 39), was filed on March 16, 2026. The Plaintiffs name the following Defendants: Rippa Machinery Group Co., Ltd, John F. Smith, Energy Power Systems, LLC, d/b/a Rippa Machinery Group, Swallow McMillan, Noah M. McMillan, McMillan Machinery LLC, Robert Lee Ray, and John Doe.

Rippa is a brand of heavy equipment manufactured in China. The Plaintiffs established a dealership for Rippa-branded machinery in 2025, and "quickly became one of Rippa's most successful dealers in the Appalachian region, selling over 200 machines in just a few months." (Am. Compl. at ¶ 19.) The Plaintiffs' customer base sought "affordable, entry-level equipment" at a lower price point than "premium brands like Caterpillar and John Deere." (*Id.* at ¶ 20.) The Plaintiffs contend that the machinery at issue falls within "a distinct and well-defined economic submarket: the market for Chinese-manufactured compact excavators sold through a U.S.-based

authorized dealer network providing a U.S. warranty, parts availability, and service support," that the Plaintiffs refer to as the "Supported Chinese Excavator Market." (*Id.* at ¶ 21.) Neither substantially more expensive brands like Caterpillar or John Deere, nor machines imported directly from China without U.S-based support and infrastructure, fall into the same market niche, and Rippa has advertised extensively to build its brand.

As a Rippa dealer, the Plaintiffs priced their equipment competitively, undercutting other dealers in the Rippa network. Defendants Robert Lee Ray, John F. Smith, the McMillans, and others communicated with one another, then with Rippa, to coordinate a campaign to force the Plaintiffs to raise prices. Rippa "agreed to act as the enforcer" and "attempted to impose a minimum resale price maintenance (RPM) policy, demanding Plaintiffs raise their prices…or lose their dealership." (*Id.* at ¶ 28.) Defendants John F. Smith and Swallow McMillan each personally contacted Mr. Gold in an effort to persuade him to participate in "the price fixing scheme, with McMillan explaining that 'everybody can make money this way.'" (*Id.* at ¶ 29.) Mr. Gold refused.

The Plaintiffs contend that the Defendants formed an association-in-fact enterprise for the purpose of "unlawfully restraining trade and defrauding Plaintiffs to enrich themselves," with Rippa "acting as the central hub and the dealer-defendants acting as the spokes." (*Id.* at ¶ 31-33.) Rippa representatives sent text messages to Mr. Gold, in which they "identified Defendant Robert Lee Ray as one of the primary dealers who had orchestrated the pressure campaign." (*Id.* at ¶ 35.) Rippa terminated the Plaintiffs as dealers and informed them that other dealers in the network would be instructed not to sell to them. The Defendants orchestrated an effort to sabotage the Plaintiffs' business, including shipping broken, misrepresented, and incomplete machines and

canceling orders, despite fulfilling similar orders for other dealers in the same time frame. Rippa representatives and others contacted the Plaintiffs' sub-agents and "induced them to breach their agreements with Plaintiffs and buy directly from Rippa or other conspiring dealers." (*Id.* at ¶ 40.) Another dealer received a communication from Rippa, stating, "we don't want this to happen to you too, so you need to raise your prices." (*Id.* at ¶ 40.) Ultimately, McMillan Machinery LLC became the exclusive dealer for West Virginia, and the Plaintiffs lost profits, reputation, and their investment in the True Force dealership.

The Plaintiffs assert the following claims for relief: Count 1 – Violation of the Sherman Act § 1 (15 U.S.C. § 1), Horizontal Price-Fixing and Group Boycott; Count 2 – Violation of the Sherman Act § 2 (15 U.S.C. § 2), Attempted Monopolization; Count 3 – Violation of the RICO (Racketeer Influenced and Corrupt Organizations) Act, 18 US.C. § 1962(c), Conducting an Enterprise's Affairs Through a Pattern of Racketeering Activity; Count 4 – Violation of the RICO Act, 18 U.S.C. § 1962(d), Conspiracy to Violate RICO; and Count 5 – Tortious Interference with Business Relations (State Law Claim). They seek an award of treble damages plus costs and fees as to Counts 1-4, compensatory and punitive damages as to Count 5, and injunctive relief barring continued price-fixing, boycotting, and other anticompetitive and fraudulent conduct, and ordering their reinstatement as authorized Rippa dealers.

## STANDARD OF REVIEW

### *A. Personal Jurisdiction – Rule 12(b)(2)*

"In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627

(4th Cir. 1997). West Virginia's long-arm statute, contained in W. Va. Code § 56-3-33(a), "is coextensive with the full reach of due process," and so the statutory and constitutional queries merge. *Id.*; *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2015 WL 4772524, at *2 (S.D.W. Va. Aug. 12, 2015) (Chambers, C.J.). "A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient "minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *Celotex*, 124 F. 3d. at 628 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). When a defendant challenges a court's personal jurisdiction in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "the burden [is] on the plaintiff to ultimately prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). When no evidentiary hearing is held, "the plaintiff need prove only a prima facie case of personal jurisdiction" and "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

A defendant's contacts can establish either specific jurisdiction or general jurisdiction. Specific jurisdiction is available where "the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2860, 192 L. Ed. 2d 896 (2015) (internal quotation marks and citations omitted). The Fourth Circuit has established a three-part test to determine whether specific personal jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities; and (3) whether the exercise of personal

jurisdiction is constitutionally reasonable." *Id.* (internal punctuation and citations omitted). General jurisdiction is available only if a corporation's contacts with a state "are so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (citing and quoting from *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

*B. Rule 12(b)(6)*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," although

allegations related to state of mind "may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a plaintiff asserting a claim under the [False Claims] Act 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008)).

The Fourth Circuit has held that:

> Rule 9(b) has four purposes: First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.,* 755 F.Supp. 1055, 1056–57 (S.D.Ga.1990)). The court further explained that dismissal under Rule 9(b) is generally disfavored if "the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

When reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.

*Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

**DISCUSSION**

*A. Personal Jurisdiction – Rippa Machinery*

Defendant Rippa Machinery seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction. Rippa states that it was incorporated in Virginia on May 29, 2025, and "has not entered into any agreements with and has no business relationship, contractual or otherwise, with either Plaintiff," and has no contacts with the State of West Virginia. (Rippa Mem. at 6.) It relies on a declaration by Xinyu Wang, the head of the legal department for Shangdong Rippa Machinery Group Co., Ltd. (Wang Dec.) (Document 12-1.) The declaration states that Rippa Machinery Group Co., Ltd. has no employees, no U.S. bank account, and has not yet engaged in any business activity. (*Id.* at ¶ 2-3.) It states that Rippa Machinery Group Co., Ltd. has not entered into any agreements with the Plaintiffs and has not been a manufacturer or supplier of any equipment to the Plaintiffs or to the other Defendants. (*Id.* at ¶¶ 5-6.) Rippa argues that the Plaintiffs' case against it should be dismissed because the Plaintiffs have not come forward with evidence to support jurisdiction.

The Plaintiffs contend that they are required only to make a prima facie showing of personal jurisdiction based on the allegations contained in the first amended complaint, and the

Wang declaration does not rebut the specific factual allegations that support jurisdiction. They emphasize that the amended complaint alleges that Rippa designated True Force as its authorized dealer in West Virginia, shipped equipment to True Force in West Virginia, and then terminated True Force and made McMillan Machinery the new exclusive West Virginia dealer. In the alternative, they contend that jurisdiction is established by allegations that Rippa participated in a conspiracy, and acts in furtherance of that conspiracy occurred in West Virginia.

The Fourth Circuit has held that "a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Challenges to jurisdiction under Rule 12(b)(2) are generally resolved by the judge, but where the jurisdictional and merits facts are overlapping and disputed, resolution may be deferred until the jury resolves the overlapping factual question(s). *Id.* at 267-68. "The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court. For example, when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* at 268. Allegations and evidence at this early stage are viewed in the light most favorable to the plaintiff, though the plaintiff must ultimately "establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Id.* District Courts have flexibility in "applying procedures that provide the parties with a fair opportunity to present to the court the relevant facts and their legal arguments" before ruling on a motion under Rule 12(b)(2). *Id.* at 269.

The Plaintiffs are West Virginia citizens and True Force Machinery LLC is a company located in West Virginia, with customers in West Virginia and elsewhere. They allege that Rippa entered into a business relationship with them, then later entered into a conspiracy to damage their business. Those allegations, if proven, would be sufficient to support personal jurisdiction. The parties have not yet had the opportunity to conduct jurisdictional discovery, and so the Court finds that the Plaintiffs are required only to make a prima facie showing, with facts and allegations viewed in a favorable light. The Wang affidavit is not sufficient to defeat the Plaintiffs' allegations at this pre-discovery stage of litigation.[1] Therefore, the motion to dismiss for lack of personal jurisdiction should be denied.

*B. Counts 1 & 2 – Sherman Act*

In separate motions to dismiss, the Defendants argue that the Plaintiff failed to adequately allege the elements of either Count One (horizontal price fixing) or Count Two (attempted monopolization). They argue that the facts alleged represent a vertical, rather than horizontal, pricing restraint, which is unlawful only if a plaintiff can demonstrate that it is anticompetitive under the rule of reason. They further argue that the Plaintiffs' market definition amounts to Rippa-branded machinery only, without alleging facts that would support finding intra-brand distribution to constitute a monopoly. The McMillan Defendants, Energy Power Systems, and Robert Lee Ray further contend that the amended complaint does not assert sufficient factual allegations specific to each Defendant.

The Plaintiffs contend that they have alleged a horizontal conspiracy, wherein the Dealers (Defendants Ray, Smith, and McMillan) formed a price-fixing and boycott agreement, then

1 The Defendant will have the opportunity to re-assert lack of personal jurisdiction after discovery takes place.

recruited Rippa to serve as the enforcer. They argue that those allegations constitute a per-se unlawful restraint on trade. Even under the rule of reason, the Plaintiffs contend that their allegations are sufficient. They argue that they have pled that the products involved form a well-defined sub-market, and that the plausibility of their market definition is a fact intensive query that cannot be resolved at the pleading stage.

Section One of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. "To establish a § 1 antitrust violation, a plaintiff must prove, and therefore plead, '(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade.'" *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 284 (4th Cir. 2012) (quoting *Dickson v. Microsoft Corp.,* 309 F.3d 193, 202 (4th Cir.2002)). "[C]oncerted action under § 1 does not turn simply on whether the parties involved are legally distinct entities. Instead, we have eschewed such formalistic distinctions in favor of a functional consideration of how the parties involved in the alleged anticompetitive conduct actually operate." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010). "In practice, there are three avenues of analysis under section 1 of the Sherman Act that apply depending on how obviously anticompetitive the challenged conduct is: (1) per se liability, (2) quick-look scrutiny, and (3) rule of reason analysis." *Robinson v. Nat'l Collegiate Athletic Ass'n*, 172 F.4th 271, 290 (4th Cir. 2026). Where the type of actions at issue are not per se unreasonable restraints of trade, they "should be evaluated at the merits stage according to the rule of reason, traditionally applied to joint venture cooperation that has possible procompetitive justifications." *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F3d. at 290.

"In the rule of reason analysis, 'the reasonableness of a restraint is evaluated based on its impact on competition as a whole within the relevant market.'" *Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002) (quoting *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 708 (4th Cir. 1991)). Plaintiffs must show anticompetitive effect, which requires a showing that the conduct harms the competitive process, and thereby harms consumers. *Id.* Courts must examine market circumstances, "including market power and share," to determine whether the harm to competition is likely and significant. *Id.* The rule of reason analysis requires "a fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition" in order to distinguish between "restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) (internal punctuation and citations omitted).

The Court presumes, at this stage, that the rule of reason will apply.[2] The Plaintiffs have alleged that they were a successful dealer of Rippa branded machinery in the Appalachian region, offering competitive pricing that attracted a broad customer base. Unhappy with the competition generated by the Plaintiffs' lower prices, a group of distributors of Rippa branded machinery entered into an agreement, with one another and with Rippa, to set minimum prices. The Plaintiffs allege that each of the dealers participated in communications to coordinate a pressure campaign to force the Plaintiffs to raise prices or be terminated, then jointly pressured Rippa to enforce the price increases. The Supreme Court offered the type of price fixing scheme alleged here as an example of a vertical price restraint that would unlawfully restrict trade. "A group of retailers might collude to fix prices to consumers and then compel a manufacturer to aid the unlawful

2 Should the evidence, following discovery, support application of a per-se rule, the Plaintiffs remain free to seek to apply that theory at later stages of litigation.

arrangement with resale price maintenance." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007) (explaining that such a scheme is designed not to "stimulate services or to promote [the] brand but to give inefficient retailers higher profits" and prevent "[r]etailers with better distribution systems and lower cost structures…from charging lower prices"). The Supreme Court further noted that such an "agreement may also be useful evidence for a plaintiff attempting to prove the existence of a horizontal cartel." *Id.* Finding that the Plaintiffs' allegations, if proven, would meet the elements of a Sherman Act § 1 claim as to each Defendant, the Court finds that the motions to dismiss as to Count One should be denied.

Section 2 of the Sherman Act provides that it is unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. The elements of a claim under § 2 are possession of "monopoly power in the relevant market" and "that the defendant willfully acquired or maintained that power through anticompetitive conduct, as opposed to gaining its monopoly status as a consequence of a superior product, business acumen, or historic accident." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 353 (4th Cir. 2024), *cert. denied,* 146 S. Ct. 1485, 223 L. Ed. 2d 503 (2026) (internal punctuation and citations omitted). "The offense of monopolization requires a showing of 'anticompetitive effect." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 211 (4th Cir. 2002). "The same kind of practices…may evidence violations of both" § 1 and § 2 of the Sherman Act. *Id.* at 202. Courts analyzing claims under Section 2 of the Sherman Act begin with an inquiry into the market definition, considering both the relevant product market and the relevant geographic market. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011).

As the Court previously found, the Plaintiffs adequately allege an agreement among the Defendants to unreasonably restrain trade. The same anti-competitive effect applies to the Section 2 claim as applied to the Section 1 claim. The Plaintiffs allege a "Supported Chinese Excavator Market" in the United States, with a "geographic submarket of West Virginia." (Am. Compl. at ¶ 51.) At this stage, the Court finds that the Plaintiffs have sufficiently alleged the relevant market. They contend that there are few, if any, competitors to Rippa offering equipment at a price-point that is affordable to smaller businesses, with accessible warranties, parts, and service. The Plaintiffs contend that "the collective market share of the Rippa dealer network within this relevant market is in excess of 70%, conferring substantial market power upon Defendants." (*Id.* at ¶ 24.) The Court finds those allegations sufficient, at the pleading stage, to state a claim that the Defendants have, or are attempting to attain, monopoly power in the relevant market. Thus, the motion to dismiss as to Count Two should be denied.

*C. RICO Claims – Counts Three and Four*

The Defendants seek to dismiss Counts Three and Four, arguing that the Plaintiffs have failed to state a claim. They emphasize RICO applies only to ongoing, large-scale unlawful activity, not ordinary fraud claims or business disputes. They argue that the amended complaint does not satisfy the strictures of Rule 9(b), as the predicate acts of wire fraud are not alleged with sufficient particularity. Defendants Ray and Energy Power Systems and the MacMillan Defendants further assert that the amended complaint does not contain sufficient factual allegations as to their conduct or role in any conspiracy.

The Plaintiffs argue that the predicate acts of wire fraud are pled with particularity. They further contend that the amended complaint details a complex scheme by the Defendants to destroy

the Plaintiffs, as a competitor business, through a pattern of fraudulent acts. They argue that the allegations that each Defendant joined the conspiracy are sufficient to state a claim against all Defendants, including those who are not alleged to have committed the predicate acts detailed in the amended complaint.

18 U.S.C. § 1962(c) provides that it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Conspiring to violate the substantive provisions of RICO is likewise unlawful. 18 U.S.C. § 1962(d). A plaintiff pleading a RICO claim "must first establish a pattern of racketeering activity," which "requires identifying two or more predicate crimes within a single scheme." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 613 (2025). The Supreme Court has explained that "RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail [or wire] fraud." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

The "racketeering activity" prohibited by RICO includes wire fraud. 18 U.S.C. § 1961(1). "When mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b)." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009). However, Rule 9(b)'s particularity requirement does not apply to the other elements of a RICO claim. *Id.* at 476. "The essential elements of a wire fraud offense are (1) the existence of a scheme to defraud and (2) the use of a wire communication in furtherance of

the scheme." *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), *as amended* (Mar. 29, 2012) (internal quotation marks and punctuation omitted).

The Plaintiffs allege that the Defendants formed an enterprise, consisting of competing dealers and Rippa, and engaged in a series of overt acts, including acts constituting wire fraud, in order to restrain trade and defraud the Plaintiffs of their business. Although the amended complaint does not contain the exact dates and times of the alleged communications, it does allege that the communications took place "after October 1, 2025." (Am. Compl. at ¶ 57.) The Plaintiffs detail the locations of actors involved and the contents of the wire communications, as well as which individuals made which communications or engaged in which specific acts in furtherance of the alleged scheme to harm the Plaintiffs' business for the benefit of the Defendants' businesses. For example, the Plaintiffs allege that Rippa, after receiving pressure from and agreeing to execute the wishes of the Dealer Defendants, shipped a used and damaged excavator to the Plaintiffs in place of a new excavator and falsely promised to send replacement parts the next day. The Plaintiffs allege a continuing series of incomplete and damaged shipments, followed by false representations as to availability of parts, while the competing dealers received the same parts and equipment that Rippa represented were unavailable to the Plaintiffs. In addition to the false representations via wire communications, the Plaintiffs allege that members of the Enterprise, including Rippa representatives, induced the Plaintiffs' sub-agents to breach their agreements with the Plaintiffs and threatened another dealer with similar actions if that dealer failed to raise prices.

The Court finds that these allegations state the wire fraud predicates with adequate particularity.[3] The Plaintiffs' detailed allegations are sufficient to ensure that the Defendants are aware of the particular circumstances for which they must prepare a defense, and it is clear that the Plaintiffs have alleged substantial evidence in support of their claims. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The Plaintiffs have alleged a continuing series of fraudulent communications, as part of a broader scheme to eliminate the Plaintiffs' pricing competition. Those allegations are sufficient, if proven, to permit a jury to find a pattern of racketeering activity. The Court further finds the allegations sufficient to allege, or at least to permit an inference, that each Defendant joined the conspiracy and is responsible for the acts in furtherance of the alleged criminal enterprise. Therefore, the Court finds that the motions to dismiss as to the RICO claims contained in Counts Three and Four should be denied.

*D. Tortious Interference*

The Defendants argue that the amended complaint fails to set forth sufficient factual allegations to support the state law claim for tortious interference with business relationships. Rippa argues that the amended complaint "fails to differentiate between the impact of lawful retail price maintenance arrangements and any supposed unlawful interference." (Rippa Mem. at 14, Document 41.) In addition, the Defendants contend that the amended complaint does not contain sufficient detail regarding the specific customers, sub-agents, and contracts that the Plaintiffs contend were the subject of the unlawful interference.

---

3 Defendant Rippa takes issue with the Plaintiffs' failure to attach exhibits documenting the fraudulent transactions and communications. (Rippa Mem. at 13, Document 41.) But Rule 9(b)'s heightening pleading requirement does not transform a motion to dismiss under Rule 12 into a motion for summary judgment, wherein evidence must be produced in support of a party's claims.

The Plaintiffs contend that the amended complaint adequately alleges their business relationships with sub-agents and customers and that the Defendants' scheme interfered with those relationships. They further argue that it was foreseeable to the Defendants that the Plaintiffs' business would be harmed by the poaching of sub-agents, sabotage of customer orders, and the price-fixing, boycotting, and fraud central to the other claims.

Under West Virginia law, the elements to establish a prima facie case for tortious interference are: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 5, *Hatfield v. Health Mgmt. Assocs. of W. Virginia*, 672 S.E.2d 395, 398 (W. Va. 2008). One party to a contract cannot bring a claim for tortious interference against the other party to the contract. *Id.* at Syl. Pt. 6. "Some link between the challenged conduct and the harms alleged is a necessary element of the plaintiffs' tortious interference claim." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 883 (S.D. W. Va. 2014) (Copenhaver, J.).

Tortious interference need not be pled with particularity. The Plaintiffs have alleged business relationships and expectancies with customers and sub-agents. They have alleged that the Defendants interfered with their orders for parts and machines, and a reasonable jury could infer that blocking the Plaintiffs' access to those parts and machines also prevented the Plaintiffs from fulfilling customer orders. The Plaintiffs also allege that Rippa representatives, acting in concert with the other Defendants, contacted the Plaintiffs' established sub-agents and "induced them to breach their agreements with Plaintiffs and buy directly from Rippa or other conspiring dealers." (Am. Compl. at ¶ 40.) The Plaintiffs allege that they suffered "lost profits, destruction

of business goodwill and reputation, and the complete loss of their investment in the True Force dealership." (*Id.* at ¶ 44.) The Court finds that the Plaintiffs have adequately alleged their business relationships with customers and sub-agents, intentional interference by the Defendants that caused harm, and damages. Therefore, the motions to dismiss as to Count Five should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Rippa Machinery Group Co., Ltd.'s Motion to Dismiss Plaintiff's First Amended Complaint* (Document 40), the *McMillan Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 42), and *Defendants Energy Power Systems, LLC and Robert Lee Ray's Motion to Dismiss Plaintiffs' First Amended Complaint* (Document 44) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 20, 2026

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA